NEW-YORK,
Sept. 1822.

The People
*vs.*
Peter Mead.

"more doubtful by the good character of the prisoner." The Jury acquitted her without retiring from the box.

## The People *vs.* Peter Mead.   *Indictment on Counterfeit Notes.*

A prisoner's motive for doing a particular act, must be discovered from a view of all the facts of his case connected with the act.

PETER MEAD was charged with atttempting to pass off to David Roe, Jun. No. 99 Catharine street, two $3 counterfeit notes ; one on the Bank of New York, and one other $3 note, on the Union Bank. The prisoner came into the store kept by Roe, on the 26th of August last, and purchased a pair of shoes for $1,50, and gave Roe the $3 note of the Bank of New York, which he declined receiving, telling him he thought it counterfeit : he then offered him the $3 note of the Union Bank, which Roe also declined receiving, telling him again, he thought them counterfeit ; and finally refused to deliver them back to Mead.

The prisoner went away, and returned in three days, and paid Roe for the shoes he had purchased, and demanded the notes Roe still had in his possession. Roe refused to give them to the prisoner ; he then went for an officer, for the purpose of obtaining possession of them. The officer and Mead returned to Roe's house ; and at the request of Roe, they all three came together to the Police Office ; and upon these facts appearing to Justice Abel, one of the Police Magistrates, Mead was committed for trial.

The prisoner accounted for the notes in this way : He said he had found them in Brooklyn, as he was walking along the bank of the river, and had no doubt they were good notes. Had never offered them to any other person than the prosecutor.

He proved a good character by a number of people of respectablity, who happened to be in court during his trial. They testified he was a hard working man, and had before this charge sustained a very good character.

*By the Recorder.* "Although Mead has not satisfacto-"rily accounted for the possession of this spurious paper, "yet, from all the circumstances of the transaction, we are "inclined to think favorably of his case. The prisoner "went to Roe's store to purchase a pair of shoes : he offer-"ed him two counterfeit notes in payment. Roe refused "to let him have either the notes or the shoes : Mead re-"turned to the store in about three days after, and paid "Roe for the shoes, and took them away, and demanded "the notes in Roe's possession ; they were again refused "to be delivered up. Upon this refusal he went for an "officer for the purpose of obtaining possession of them.

"Now we can find no surer guide to explain the secret "intention of a man, than a general view of his conduct : "an accurate view of all the circumstances that took place "at the time ; from these his motives may often be ascer-"tained. It seems improbable that after Roe had the notes "in his possession, and had declared them counterfeit, and "refused to deliver them up, that the prisoner should again "return to his store and pay, with good money, for the "shoes he had bought before, when he might as well have "purchased them any where else.

His demand of the notes, and on refusal, returning "with an officer, makes very strong for him : but most of "all, the prisoner has shown he sustains a good charac-"ter.* This fact, in our opinion, ought to have full weight "in a case of this kind : character, in all cases, is to be re-"spected, but in this and similar ones, it ought strongly to

*See the case of Mary A. Turrell.

"influence us : upon the facts and principles of this case, "we thing the prisoner ought to be acquitted." The jury returned a verdict "not guilty."